UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| JULIE MOORE; AMY CIMEI and JASON CIMEI; HUBERT J. and CHERYL MENNIE; and ROBERT BORRI and NANCY BORRI; Individually and on behalf of all residents, and potential candidates for election residing in of [sic] Congressional Township 32 North, Range 1 West of the Third Principal Meridian, | ) ) ) ) ) ) ) ) | Case No. 1:07-cv-01011-JBM-JAG |
| Plaintiffs, | ) | (Removed from |
| vs. | ) ) | Circuit Court of the Tenth Judicial Circuit, Putnam County, |
| PUTNAM COUNTY COMMUNITY SCHOOL DISTRICT # 535, A Body Politic, | ) ) ) | Illinois (Case No. 06–MR–10) |
| Defendant. | ) | |

**DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS COMPLAINT
AND
MOTION TO STAY PROCEEDINGS, TO AFFORD
ILLINOIS ATTORNEY GENERAL AN OPPORTUNITY TO INTERVENE**

NOW COMES Defendant Putnam County Community Unit School District No. 535, Putnam County, Illinois, by its attorneys Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., and moves the Court pursuant to F.R.Civ.P. 12(b)(6) to dismiss Plaintiffs' Complaint, following briefing of and requested oral argument on this motion.  Defendant also requests to leave to stand on this Rule 12(b)(6) motion as its supporting memorandum of law.

Defendant further moves the Court to stay proceedings – other than the filing pursuant to Local Rule 7.1(B) of Plaintiffs' response to Defendant's 12(b)(6) motion – for 30 days or other reasonable period of time to afford the Attorney General of the State of Illinois an opportunity to seek intervention in this case for the purpose of defending the statutes which Plaintiffs have

challenged as unconstitutional on federal and state equal protection grounds. As litigants raising these constitutional issues, Plaintiffs were required by Illinois Supreme Court Rule 19 to serve notice of their Complaint on Attorney General. To Defendant's knowledge, Plaintiffs have not done so to date. A copy of Defendant's February 13, 2007 letter notice to the Illinois Attorney General providing the requisite Rule 19 notice is attached as Exhibit A to this motion.

**A.     In support of Rule 12(b)(6) dismissal, Defendant states as follows:**

1.     This action was commenced in the Circuit Court for the Tenth Judicial Circuit, Putnam County, Illinois on December 20, 2006. Plaintiffs' Complaint asserts that the method prescribed by state law for electing members of Defendant's Board of Education has deprived them of equal protection of the laws guaranteed by the Fourteenth Amendment of the United States Constitution.

The Complaint also asserts that the Illinois School Code provisions in question violate Article III, Section 3 of the 1970 Illinois Constitution, which states that "[a]ll elections shall be free and equal."

2.     Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1441(b) and 1446 on January 12, 2007. Subject matter jurisdiction is proper under 28 U.S.C. § 1331 in light of the federal questions presented, and under 28 U.S.C. § 1367(a) with respect to the related state claims.

3.     The Complaint alleges that pertinent parts of Article 9 of the Illinois School Code – and in particular, the section thereof which provides that all voters in certain multi-township school districts shall elect all seven members of the board of education, but restricts the membership of the board to a maximum of three members residing in any single township – violates the principle of "one person, one vote" as applied to Plaintiffs and other residents of Township 32N, R1W, pleaded

to be the majority population township in Defendant District 535. *See* Complaint paragraphs 9 through 12. (Although not specifically cited by Plaintiffs in their Complaint, this provision is found in § 9-12 of the School Code at 105 ILCS 5/9-12 and more specifically, in Ballot Format 4 set out therein and applicable to District 535.)

4. The Complaint also alleges that this law unconstitutionally crimps the opportunity of would-be candidates residing in the majority population township to be elected to the school board.

5. Plaintiffs' Complaint should be dismissed pursuant to F.R.Civ.P. 12(b)(6) for failure to state any claim on which relief can be granted, in that controlling case law refutes both of the above propositions.

6. "[A]s a general rule, whenever a state or local government decides to elect persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in the election, and *when members of an elected body are chosen from separate districts*, each district must be established on a basis that will ensure, as far as practicable, that equal numbers of voters can vote for proportionally equal numbers of officials." *Hadley v. Junior Coll. Dist.*, 397 U.S. 50, 56, 90 S.Ct. 791, 795 (1970) (emphasis added) (holding that the "one man, one vote" principle applied to the election of the defendant college district's trustees).

7. However, as the *Hadley* Court went on to state, this holding did not inhibit states from finding ways to ensure that legitimate political goals of representation are achieved. "We have previously upheld against constitutional challenge an election scheme that required that candidates be residents of certain districts that did not contain equal numbers of people. Dusch v. Davis, 387

U.S. 112, 87 S.Ct. 1554 (1967). Since all the officials in that case were elected at large, the right of each voter was given equal treatment." *Hadley*, 397 U.S. at 58, 90 S.Ct. at 796.

8. *Dusch v. Davis* disposes of Plaintiffs' one person, one vote argument in this case. In *Dusch*, the Court rejected an Equal Protection Clause challenge to a so-called "Seven-Four Plan" for electing members of the Virginia Beach City Council. Under that plan, each of the 11 council members was elected by a vote of all the electors in the City. Four members were elected at large without regard to residence. Each of the remaining seven council members had to reside in the borough from which he or she was elected.

9. Delivering the opinion of the *Dusch* Court, Justice Douglas explained why this residence requirement was constitutionally unobjectionable: "In upholding a residence requirement for the election of state senators from a multi-district county we said in Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 501, 13 L.Ed.2d 201: ' It is not accurate to treat a senator from a multi-district county as the representative of only that district within the county wherein he resides. The statute uses districts in multi-district counties merely as the basis of residence for candidates, not for voting or representation. Each district's senator must be a resident of that district, but since his tenure depends upon the county-wide electorate he must be vigilant to serve the interests of all the people in the county, and not merely those of people in this home district; thus in fact he is the county's and not merely the district's senator.'" *Dusch v. Davis*, 387 U.S. at 115, 87 S.Ct. at 1555-56.

10. Likewise in this case, it is not accurate to treat a school board member elected by all the voters of a district of multiple congressional townships, as the representative of only that township in which the board member resides. Each school board member must be attentive to the needs and interests of the entire district electorate which votes the board member into (or out of) office.

11. Plaintiffs' claim that the School Code provisions at issue violate their Fourteenth Amendment rights as voters fails to state a claim, in light of the Supreme Court's decision in *Dusch v. Davis*, handed down nearly 40 years ago and cited and followed in many lower court cases. *See, e.g., La Port County Republic Cent. Comm.*, 43 F.3d 1126, 1129 (7th Cir. 1994) (holding that residence districts need not have identical "or even similar" populations because voters may cast ballots for each of three county board positions, and affirming dismissal of suit on the pleadings); *Hurlbut v. Scheetz,* 804 F.2d 462 (8th Cir. 1986) (approving election system requiring at-large voting in school board elections in sparsely populated North Dakota district, including restriction that ballots group candidates by residence and that one candidate be elected from each of five geographic areas: "[p]reserving distinct viewpoints of scattered geographical areas within a single governmental entity has been recognized by the Supreme Court [in *Dusch*] as a sufficient justification for use of geographic residency requirements in conjunction with an at an-large voting scheme"); *Jt. Sch. Dist. No. 2 v. State Appeal Bd.*, 83 Wis.2d 711, 726, 266 N.W.2d 375, 381-82 (S.Ct. Wis. 1978) (electing one board member from each of nine former elementary school districts, reorganized with a union high school into a K-12 district, did not unconstitutionally "dilute" votes of residents in more populous districts: under *Dusch*, voting districts of unequal population are permissible if board is elected at large and member of board represents the entire district); *Goldblatt v. City of Dallas*, 414 F.2d 774, 775-76 (1969) ("appellant wisely does not contend that the Dallas 'six-three' city council election structure is unconstitutional per se", the Supreme Court having specifically approved an analogous plan in *Dusch*: the one man-one vote principle is automatically complied with because all votes are equal in a city-wide election).

12. Plaintiffs also assert that the residency restrictions in the challenged School Code provisions violate their Fourteenth Amendment rights as would-be candidates for the Board of Education. They contend the law is fatally flawed in that, as pleaded in paragraph 10 of the Complaint, it "prohibits plaintiffs and other similarly situated residents of Township 32N, R1W ...from being elected to said board despite having received more votes than residents of other townships in said District".

13. This assertion, too, fails to state a claim and should be dismissed pursuant to F.R.Civ.P. 12(b)(6). Under the case law cited above, and to paraphrase *Goldblatt v. City of Dallas*, 414 F.2d at 776, the possibility that a particular resident candidate wins in his township but loses district-wide does not amount to discrimination against either the candidate or against the voters of that township: "The election is [district]-wide, and the elected official is a representative of the entire [district], not merely of a particular [township]."

14. Even if the residency requirement were to be viewed as a species of ballot access restriction – which it is not, there being no limit to the number of Township 32N, R1W residents who may vie for such of the total three school board seats "reserved" for them as may be open in any given school board election – the State's interest in fostering geographic diversity on school boards of large, multi-township districts is sufficient to justify the calibrated limitations reflected in the provisions of School Code § 9-12.

15. Courts evaluate ballot access restrictions under a flexible standard that weighs the "'character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to

which those interests make it necessary to burden the plaintiff's rights.'" *Lee v. Keith*, 463 F.3d 763, 768 (7th Cir. 2006), quoting *Burdick v. Takushi*, 504 U.S. 428, 434, 112 S.Ct. 2059 (1992), quoting in turn *Anderson v. Celebrezze*, 460 U.S. 780 at 789, 103 S.Ct. 1564 (1983). "Under this standard, the rigorousness of...inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434, 112 S.Ct. 2059. Restrictions that *severely* burden the exercise of constitutional rights must be narrowly drawn to advance a state interest of compelling importance (such as education, *see Fumarolo v. Chicago Bd. of Educ.*, 142 Ill.2d 54, 566 N.E.2d 1283, 1299 (1990)), whereas "reasonable, nondiscriminatory restrictions" that impose less substantial burdens are generally justified by the state's "important regulatory interests". *Id.*

16. Unlike Illinois' demanding ballot access rules struck down in *Lee v. Keith*, which in combination made it well-nigh impossible for independent candidates to run for election to the State legislature, the electoral method objected to by Plaintiffs in this case does *not* severely burden, let alone have the effect of "thoroughly excluding" (*cf. Lee*, 463 F.3d at 769) candidates from the majority population township entering a school board race. Far from it: three of the seven school board members may be elected from a candidate pool supplied by residents of Township 32N, R1W.

17. Moreover, and as highlighted below, School Code § 9-12 read as a whole is carefully calibrated to serve Illinois' important – if not compelling – interest in bringing about, under politically palatable conditions, the consolidation of the State's smaller school systems into unit school districts to more efficiently and cost-effectively secure public education of good quality for students in grades K through 12.

18. District 535's Board of Education is currently elected using the "Format 4" Official Ballot prescribed by School Code § 9-12, which applies (insofar as pertinent for present purposes) to community unit school districts formed prior to January 1, 1975 when the territory of the school district is greater than two congressional townships, or 72 square miles, *except* for those community unit school districts formed prior to January 1, 1975 that only elect board members at large *and* without restriction by area of residence within the district. As District 535 does not fall within the latter excepted category, its school board elections use the Format 4 ballot, which provides that "not more than 3 board members may be selected from any one congressional township", *and* which applies "only when less than 75% of the population. is in one congressional township". 105 ILCS 5/9-12 "FORMAT 4".[1]

19. If and when at least 75% but less than 90% of the population of such a district resides in one congressional township, then the number of school board members to be selected from that one township increases to *four*, and the remaining three board members are selected from the district

---

[1] Plaintiffs plead the facts which illustrate the applicability of Format 4 only obliquely, in Complaint paragraph 10 which asserts, "Under the provisions of 105 ILCS 5/11A-8, succeeded by 105 ILCS 5/9, only three of the seven members of the Board of Education of Putnam Community Unit School District # 535 may reside in Township 32 N R1W of the 3rd Principal Meridian, notwithstanding the fact that *a majority of the residents of said District reside in said township*." (Emphasis added).

Referenced § 11A-8 of the School Code (105 ILCS 5/11A-8) described the requirements for passage of referenda to create a community unit school district and, in the cases of community unit districts encompassing more than two congressional townships or 72 square miles, prescribed the geographic representation requirements calibrated to population which are contained in the Official Ballot Formats set out in School Code § 9-12, reviewed above. *See* former § 11A-8(b), 105 ILCS 5/11A-8(b).

Section 11A-8 was repealed along with the rest of School Code Article 11A ("Unit District Formation") by Public Act 94-1019, effective July 10, 2006. In P.A. 94-1019, the legislature comprehensively updated school reorganization mechanisms to further encourage and remove perceived barriers to school consolidations. As P.A. 94-1019 did not repeal School Code § 9-12, the ballot formats prescribed in that section remain in use, as applicable in particular unit districts.

in elections which are then conducted using Official Ballot Format 5. *See* 105 ILCS 5/9-12 "FORMAT 5".

20. If and when more than 90% of the population of such a district resides in one congressional township, Official Ballot Format 2 is used. Then school board members are elected at large, and "[m]embership on the school board is not restricted by area of residence." *See* 105 ILCS 5/9-12 "FORMAT 2"; *cf.* Complaint Count Two, paragraph 14.B., in which Plaintiffs ask the this Court to direct that Format 2 be used in "any election for members of the board of education of...District # 535", and that "candidates receiving the highest number of votes be elected to said board, irrespective of their place of residence in said district."

21. Plaintiffs are not entitled to such extraordinary equitable relief, nor to any relief at all. The automatic adjustments of school board electoral mechanisms built into School Code § 9-12 represent exactly the type of narrow tailoring courts look for, in evaluating whether a ballot access restriction exceeds what is needed to serve a compelling state interest in situations where election law restrictions impose a "severe" burden on rights of potential candidates.

22. But again, School Code § 9-12's election provisions do not place a "severe" burden on prospective school board candidates from majority population townships, and find explicit sanction in the U.S. Supreme Court's decisions in *Dusch* and *Hadley*. Any judicial evaluation of the election provisions in § 9-12 must proceed under the standard which applies to "reasonable nondiscriminatory restrictions" which impose modest "burdens" to serve important State regulatory interests, *see Lee v. Keith*, above. The provisions of the School Code challenged by Plaintiffs readily satisfy that standard.

23. Last but not least, the *de minimus* and constitutionally permissible "burdens" assertedly imposed by School Code § 9-12's applicable provisions are further alleviated by the fact that School Code § 9-22 provides a method by which Plaintiffs and their fellow electors / would-be candidates resident in Township 32N, R1W can initiate a referendum on the proposition of electing school board members by school board districts if they deem that system preferable, instead of district-wide as is presently done.

24. Section 9-22 authorizes such a referendum if initiated by the board of education, or on petition of the lesser of 2,500 or 5% of registered voters of the district. The proposition passes if a simple majority of voters, district-wide, approves it. Thus, if District 535 voters in Township 32N R1W want to eliminate the alleged unequal burdening of their rights as candidates by adopting an election-by-district system, then as the most populous group of electors in the district they have ample political power to attain this fully adequate remedy at law.

25. Dismissal of Plaintiffs' claims insofar as they are founded on the "free and fair elections" provisions of the Article III, Section 3 of the 1970 Illinois Constitution is also warranted. The Illinois Supreme Court has equated the Illinois Constitution's guarantee of "equal protection of the laws", and the "free and equal" requirements of Article III, Section 3, with protections afforded by the Equal Protection Clause of the Fourteenth Amendment, stating that no precedent suggests that the Illinois Constitution calls for more than the Federal Constitution in relation to equal protection safeguards. *Fumarolo v. Chicago Bd. of Educ.*, 142 Ill.2d 54, 566 N.E.2d 1283, 1290 (1990).

21. In accordance with Local Rule 7.1(A)(2), Defendant respectfully requests an opportunity to present oral argument on this Rule 12(b)(6) motion, to provide the Court an opportunity to

question and receive clarification from the parties directly concerning any points deemed relevant to disposition of the motion.

      **B.    In support of its motion to stay briefing and other proceedings in this cause for a reasonable period of time to afford the Illinois Attorney General an opportunity to seek intervention for the purpose of defending the constitutionality of the statutes involved, Defendant states that:**

1. Although eight weeks have passed since they commenced this action in state court, Plaintiffs have not, to Defendant's knowledge, served notice on the Illinois Attorney General of their cause of action asserting that School Code Article 9's pertinent provisions are unconstitutional, as they are required to do by Illinois Supreme Court Rule 19 in order to afford the State an opportunity to seek intervention for the purpose of defending the constitutionality of the challenged law.

2. Because Plaintiffs' action contests the validity of Defendant's Board of Education as elected pursuant to the challenged statutes, and the right of current Board members to hold their offices, it critically affects not only Putnam County Community Unit School District No. 235 but other Illinois school districts in which elections are subject to the mandatory board representation provisions of School Code § 9-12.

3. In light of the requirements of Illinois Supreme Court Rule 19 and the clearly apparent interest and obligation of the State to defend the constitutionality of School Code Section 9-12 challenged in this action, Defendant has provided letter notice of this action to the Illinois Attorney General. A copy of said notice as hand-delivered to Attorney General's Chicago office on February 13, 2007 is attached to this motion. (For brevity's sake, the attached copy excludes referenced enclosures to the letter notice, consisting of pleadings, filings and court orders entered herein to date.)

WHEREFORE, Defendant Putnam Community Unit School District No. 535 requests the Court to enter an order

A.  Permitting Defendant to submit and stand on this Rule 12(b)(6) Motion To Dismiss the Complaint as its memorandum of law in support of said motion;

B.  Requiring Plaintiffs to respond to Defendant's Rule 12(b)(6) motion within 14 days in accordance with Local Rule 7.1.B.;

C.  Staying further proceedings herein for 30 days or other reasonable time to afford the Illinois Attorney General an opportunity to intervene in this action to defend the constitutionality of the Illinois statutes challenged by Plaintiffs;

D.  Permitting oral argument on Defendant's Rule 12(b)(6) motion on a date thereafter to be set by this Court.

Respectfully Submitted,

By:  s/Everett E. Nicholas, Jr.
      One of Defendant's Attorneys

Everett E. Nicholas, Jr. (ARDC No. 2048329)
enicholas@rsnlt.com
Dennis L. Weedman (ARDC No. 6217020)
dweedman@rsnlt.com
Robbins, Schwartz, Nicholas,
  Lifton & Taylor, Ltd.
132 S. Water Street
Suite 420
Decatur, Illinois 62523-1332
Telephone:	(217) 428-2100
FAX:	(217) 428-2186

**PROOF OF SERVICE**

I hereby certify that on February 14, 2007, I caused to be electronically filed the "Defendant's Rule 12(b)(6) Motion to Dismiss Complaint And Motion To Stay Proceedings, To Afford Illinois Attorney General An Opportunity To Intervene," with the Clerk of the Court using the CM/ECF system. The following individual will be served by facsimile transmittal to (815) 780-1714 and via U.S. mail by depositing said copy in the United States Mail at a Post Office Box in the City of Chicago, Illinois before the hour of five o'clock p.m. on the 14th day of February 2007 :

> John A. Grivetti, Jr.
> Attorney At Law
> P.O. Box 50
> Standard, IL 61363

> By:  s/Everett E. Nicholas, Jr.

Everett E. Nicholas, Jr. (ARDC No. 2048329)
enicholas@rsnlt.com
Dennis L. Weedman (ARDC No. 6217020)
dweedman@rsnlt.com
Robbins, Schwartz, Nicholas,
   Lifton & Taylor, Ltd.
132 S. Water Street
Suite 420
Decatur, Illinois 62523-1332
Telephone:     (217) 428-2100
FAX:              (217) 428-2186