UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JULIE MOORE, et al ) | |
|     Plaintiffs ) | Case No. 1:07-cv-01011-JBM-JAG |
| ) | |
| -v- ) | Removed from: Circuit Court of the 10th |
| ) | Judicial Circuit, Putnam County, IL |
| PUTNAM COUNTY ) | ( 06 MR 10) |
| COMMUNITY UNIT DISTRICT ) | |
| # 535, A Body Politic, ) | |
|     Defendant ) | |

**RESPONSE TO DEFENDANT'S RULE 12(b)(6)
MOTION TO DISMISS
AND
MOTION TO STAY PROCEEDINGS**

**STATEMENT OF FACTS**

Defendant, the Putnam County Community School District # 535, is a body politic organized under a now repealed provision of Illinois Statute. Under the provisions of the statute as it existed at the time of the organization of the District, the board of education governing the District is composed of seven members, and no more than three of those members may be elected from any congressional townships which comprise the District.

Attached hereto, as exhibit "Putnam County Map", is a map of the portion of Putnam County, Illinois, which comprises virtually all of the territory of said District, showing the congressional township lines, as well as the locations of all municipalities in the District. In addition to the territory in Putnam County, small portions of Marshall and LaSalle Counties which adjoin the Putnam County portion of the District are also

included within its boundaries. These non Putnam County portions of the District make up a minimal portion of its population.

The total population of the district in Putnam County, according to the latest (2000) census figures, was 5401. Adjusted for the variance between congressional and political townships, according to the latest census the various townships in the district have the following populations:

(Note that the congressional townships in Putnam County are not coterminous with the political townships. Granville Township, the largest of the political townships, which contains the municipalities of Granville, Mark, and Standard, contains most of TWP 32 N, R 1 W, and that part of TWP 33 N, Range 1 W situated in Putnam County. Magnolia Township, containing the municipalities of Magnolia and McNabb, contains all of Twp 31 N, R 1 W, as well as part of TWP 31 N R 2 W. Hennepin Township, containing the municipality of Hennepin, is composed of all of that part of TWP 32 N. R. 2 W located east of the Illinois river, as well as parts of TWP 32 N R 1 W, TWP 33 N R 2W, and TWP 31 N R 2W)

    TWP 32 N, R 1 W    2900    (36)

    TWP 33 N, R 1 W    176    (37)

    TWP 31 N, R 1 W    1106    (34)

    TWP 31 N, R 2 W    140    (33)

    TWP 33N, R 2 W    20    (35)

    TWP 32 N, R 2W    1059    (35)

(numbers in parentheses correspond to index numbers on map)

As can be seen from the foregoing figures, Twp. 32 N, R 1W contains approximately 54 % of the population residing in defendant District, but, by law, no more than 42% of the members of the Board of Education governing the District may reside in 32 N R 1 W, irregardless of the will of the voters of the district.

The electoral system governing defendant District is now set forth in 105 ILCS 5/9-12, and is known as Ballot Option 4. Significantly, this system is not available to unit school districts formed after 1975.

In an election for district board members, all persons seeking a vacancy in a board seat run for that seat regardless of their congressional township of residence. This results in a situation in which the successful candidate for a board seat is not necessarily the candidate who receives the highest number of votes. For instance, if, at the time of a vacancy, there are 2 board members residing in 32 N R 1 W whose seats are not be contested, and 3 open vacancies that are being contested, candidates from all townships are listed as running for the open vacancies. If, however, there are 3 candidates from 32 N R 1 W and 3 candidates from all of the other townships in this district, and the three candidates from 32 N R 1 W receive the highest number of votes, only ONE of the 32 N R 1 W candidates would be deemed to have been elected to the board, and two candidates who do not live in that township who have received lesser number of votes would be seated. Two candidates residing in TWP 32 N R 1 W, despite having received more at large votes from throughout the district than candidates not residing in that township, would not be elected. A scenario in which candidates who are not elected despite having received more votes that their competitors is not merely theoretical, as it has occurred in

defendant district as well as other districts governed by this no longer available electoral option.

**RESPONSE TO MOTION TO DISMISS**

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which , as good citizens, we must live." Wesburry v. Sanders, 376 U.S. 1, 17, 84 S.Ct. 526, 534-535, 11 L. Ed. 2d 481 (1964). Likewise, the education of children is of paramount interest to parents, as well as one of the fundamental duties of a society.  Since the State of Illinois has determined that the common schools of Illinois are governed by elected school boards, it is constitutionally required that the elections be conducted in a such a manner that the vote of each citizen has equal weight. As was stated in Gray v. Sanders, 372 U.S. 368, 83 S. Ct. 801, 9 L. Ed. 2d 821, "How then can one person be given twice or 10 times the voting power of another person in a statewide election merely because he lives in a rural area or because he lives in the smallest rural county. Once the geographical area for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote – whatever their race, whatever their sex, whatever their income, and wherever their home may be in that geographical unit. This is required by the Equal Protection Clause of the Fourteenth Amendment. The concept of "we the people' under the constitution visualizes no preferred class of voters but equality among those who

meet the basic qualifications." Later in the same case, the Court stated: "The concept of political equality in the voting booth contained in the Fifteenth Amendment extends to all phases of state elections, and, as previously noted, there is no indication in the Constitution that homesite or occupation affords a permissible basis for distinguishing between qualified voters within the State. >>>> As we stated in Gomillion v. Lightfoot, 364 U.S. p. 347, 81 S.Ct. p. 30: 'When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right.' " Plaintiffs, as residents and citizens of defendant District, have a constitutional right to participate in an election which, in the words of Art. III, Section 3 of the Illinois Constitution, is "free and equal." An election is free where the voters are exposed to no intimidation or improper influence and where each voter is allowed to cast his ballot as his own conscience dictates. Elections are equal when the vote of each voter is equal in its influence upon the result to the vote of every other elector, and where each ballot is as effective as every other ballot. People ex rel Elder v. Wuilici, 309 Ill. App. 466, 33 N.E. 2d 492 (1941)

Defendant relies heavily on the case of Dusch v. Davis, 387 U.S. 112, 87 S. Ct. 1554, 18 L.Ed. 2d 656 (1967) in which the Court, in the words of Morris v. Board of Estimate, 647 F.Supp. 1463, "cautiously allowed" an experimental borough residency requirement for the election of a governing body of a newly created municipality that was composed of seven preexisting boroughs of widely varying areas and population. Plaintiffs contend that the Dusch decision does in any way sanction the electoral system used to elect the Board of Education of defendant District.

5

In Dusch, 7 members of the governing body were elected from specific geographic jurisdictions, but all of the voters in the district, even those not residing in the candidate's residence district, voted for all seven of those members, as well as 4 additional members who were elected at large with no residence requirements. Thus, is two persons were running from a particular borough, they were competing only against each other for election, not against candidates from the other boroughs. The Court reasoned that, in these circumstances, all of the candidates had to appeal to voters from the entire district, and to serve the entire district, without regard to the residence limitations. This is clearly not the situation in the electoral scheme used by defendant District. Candidates for election to the District's board are not elected in an "at large" scheme that is equivalent to that sanctioned in Dusch. Because of the presence of all candidates for vacancies on the ballot for a vacancy, even though only a limited number of members may be elected from congressional township, there is no need for a candidate from a smaller township to appeal to voters in the largest. Even though the will of the majority of district voters may favor a candidate from the largest township, that candidate cannot be elected to the board, and a candidate from a smaller township receiving substantially fewer votes will be seated. Clearly, votes are not of equal weight when, in a direct contest between candidates in an at-large election, a candidate who received the least votes is elected. The system employed by the District, rather than being one which protects minority and territorial rights and encourages candidates to appeal to the majority of voters, explicitly disenfranchises voters in the most populous township in the District. In discussing Dusch, the court in <u>Palmer v. Board of Education, 43 F.3d 682,</u> approved a pure at-large voting scheme, noting that, in an at-large scheme such as that

6

contemplated by Dusch, even if 90% of the representatives had to come from an area containing 10% of the people, the scheme could be permissible because candidates could only get elected if they please the majority of the entire population. That is clearly not the situation in the case before this court, as candidates residing outside of Twp 32 N, R 1W do not have to please the majority of the population, and can be elected if they are in fact rejected by the majority of voters in their own township of residence as well as the entire district. In the case of <u>Hadley v. Junior College District of Metropolitan Kansas City, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970),</u> the Court held that where the statutory formula for election of junior college district trustees resulted in systematic discrimination against voters in more populous school districts comprising a junior college district and operated so that voters in large districts might frequently have less effective voting power that residents of small districts, but could never have more, the junior college trustees could not be constitutionally allocated according to a statutory formula similar to the one at issue. In that case, as in the case at bar, the statutory scheme allocated more trustees to large districts as they represented an increasing proportion of the total population, but the court stated: "Although the statutory scheme reflects to some extent a principle of equal voting power, it does so in a way that does not comport with constitutional requirements. This is so because the Act necessarily results in a systematic discrimination against voters in the more populous school districts. ….. while voters in large school districts may frequently have less effective voting power that residents of small districts, they can never have more.  Such built in discrimination against voters in large districts cannot be sustained as a sufficient compliance wit the constitutional mandate that each person's vote count as much as another's, as far as practicable."  The

7

voting scheme at issue clearly impermissibly dilutes the voting strength of an identifiable group, and as such could be successfully challenged even under the Dusch holding, were it applicable. There are no cases sanctioning the sort of modified at large voting systems before the court, which specifically thwarts the will of the majority of the at–large voters. The tenure of board members residing outside Twp 32 N R 1 W does not, as required by Dusch, depend upon the district wide electorate. In fact, candidates not residing in that township would, and have, benefited by appealing only to the voters residing outside 32 N R 1 W.  As noted in the letter sent by defendant's counsel to the Attorney General of Illinois, the current board, which plaintiffs contend was unlawfully elected, has chosen to refuse to rebuild a school, located in 32 N R 1 W and severely damaged by a tornado, in that township, where a majority of the children of the district reside, and to instead use tornado relief and insurance monies to build a school in the least populated of the major congressional townships, thereby necessitating the transportation of students to a non-central location in the District.

Even more important is the denial of the rights of potential candidates for election.  The right to become a candidate for public office is a fundamental right, and restrictions upon that right are subject to constitutional scrutiny. "Constitutional challenges to specific provisions of a State's election laws therefore cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions. Storer, 415 U.S. at 730, 94 S. Ct. at 1279. Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation.  It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and

8

evaluate the precise interests put forward by the State for the burden imposed by its rule. In passing judgment, the court must not only determine the legitimacy and strength of each of those interests; it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional. Defendant, in its Motion to Dismiss, claims that the State's interest in fostering geographic diversity, and compelling interest in bringing about, under politically palatable conditions, the consolidation of the State's smaller school systems into unit districts to more efficiently and cost effectively secure public education of good quality are such overriding considerations, but these claims compelling interests are rendered meaningless by the very school code under which school elections are conducted and by which districts are governed. The district election scheme being contested, far from being necessary to "foster geographic diversity" and to bring about school consolidation, was abandoned by the State of Illinois for school consolidations undertaken after July 1, 1975. Given the numerous school district consolidations that have taken place after that date without the denial of the rights of the majority of district residents in electing the governing board of the new unit district, any claim that the ballot scheme which restricts majority vote is necessary to facilitate such consolidations is ludicrous. The State of Illinois has clearly shown that there is no "compelling state interest" which provides any justification whatsoever for the invidious discrimination against candidates from Twp 32 N, R. 1 W. Restrictions which severely burden the exercise of constitutional rights, which an electoral scheme that denies election to a candidate who received the majority of the vote in an at-large system clearly is, must be

narrowly drawn to advance a state interest of compelling importance. <u>Lee v. Keith, 463 F. 3d 763 (2006).</u> Illinois, by abandoning the use, by new unit districts, of the ballot format used by defendant District, has abandoned any pretence of a state interest of compelling importance in its continued use by districts formed prior to 1975.

Likewise, the claim that the "automatic" ballot adjustments set forth in 9-12 provide a remedy is without merit, as the scheme rejected in Hadley contained analogous adjustments. Those adjustments do not, in any way, alleviate the unconstitutional denial of majority rights contained in the challenged electoral scheme, as they perpetuate domination of the board by an area of the District containing a clear minority of the populace.

Last but not least, defendant's claim that the provisions of School Code Section 9-22 have provided a remedy for plaintiffs is illusory.  Until the effective date of the revision of the School Code in July, 2006, that section was NOT APPLICABLE to defendant district, and the effective date made its electoral provisions unavailable to plaintiffs in time to affect the currently scheduled election.  At all times prior to the revision, any change in the method of elections in defendant District was  possible only if said change was approved in each of the congressional townships of the District, which had the effect of giving the beneficiaries of the unconstitutional board election procedures a veto over any change in those procedures.  Constitutional rights cannot be subject to the will of a minority of the voters of a jurisdiction.

**RESPONSE TO REQUEST FOR STAY BY DEFENDANT**

Defendant requested a stay of proceedings in this cause in order to afford the Attorney General of the State of Illinois an opportunity to defend the statute at issue here. While no formal stay was issued, no action was taken by the parties, save the filing of the Motion to Dismiss, pending the decision of the Attorney General.  Counsel for plaintiffs has received a copy of a letter from the Attorney General, directed to counsel for defendant, indicating that that office will not seek to intervene in this cause to defend the statute.  Given this state of affairs, the request for a further stay appears to be moot, an there is no reason to further delay proceedings herein.

WHEREFORE, Plaintiffs respectfully request that this court DENY the Motion to Dismiss filed by defendant, STAY any action by defendant to construct new school facilities, and GRANT Plaintiffs such other and further relief as may be necessary to secure the unfettered exercise of their constitutional rights.

Respectfully submitted,

By: s/ John Grivetti,
Attorney for Plaintiffs

JOHN GRIVETTI
ARDC # 1063375
john@grivettilaw.com
Box 50
Standard, IL 61363
815.690.3822

PROOF OF SERVICE

      I hereby certify that on April 12, 2007, I electronically filed the foregoing Response to Defendant's Rule 12 (b)(6) Motion to Dismiss and Motion to Stay Proceedings with the Clerk of the United States District Court for the Central District of Illinois using the CM/ECF system which will send notification of such filing to Everett E. Nicholas and Dennis L. Weedman, of the firm of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., 132 S. Water Street, Decatur, IL 62523

S/<u>John Grivetti</u>


John Grivetti
/ARDC # 1063375
Grivetti Law Office
Box 50
Standard, IL 61363
815.690.3822
john@grivettilaw.com

1:07-cv-01011-JBM-JAG   # 8   Filed: 04/12/07   Page 13 of 14

