**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| JULIE MOORE, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>PUTNAM COUNTY COMMUNITY SCHOOL )<br>DISTRICT #535, )<br>)<br>Defendant. ) | Case No. 07-cv-1011 |

## O R D E R

Before the Court is the Motion to Dismiss and to Stay filed by Defendant, Putnam County Community School District #535, on February 14, 2007 [Doc. 5]. For the reasons that follow, the Motion to Dismiss is GRANTED and the Motion to Stay is DENIED AS MOOT.

### BACKGROUND

This matter was removed from state court on January 12, 2007. Defendant filed its Motion to Dismiss and Stay on February 14, 2007. Plaintiffs failed to respond to the Motion within the time period allotted by Local Rule 7.1(B)(2). Upon prompting, however, Plaintiffs filed a response on April 12, 2007.

The Complaint asserts claims for declaratory and injunctive relief related to the scheme employed by the State of Illinois for the election of governmental units in Putnam County,

Illinois.  Plaintiffs are residents of Congressional Township 32 North, Range 1 West of the Third Principal Meridian ("Township 32").  As such, Plaintiffs vote in elections for members of the Board of Education of Putnam County Community Unit District #535 ("Board of Education").  Plaintiffs allege that pursuant to state law, only 3 of the 7 members of the Board of Education can be residents of Township 32.  Thus, Plaintiffs contend that even if a candidate, who resides in Township 32, receives more votes than a person who is not a resident, he/she will not become a member of the Board of Education if it already has 3 members from Township 32.  Plaintiffs assert that this violates the Equal Protection Clause of the Fourteenth Amendment, and the Illinois Constitution, because a successful candidate need not garner the winning number of votes.  Plaintiffs further contend that their votes are diluted and that this scheme places candidates from Township 32 and from other areas on unequal footing.  Plaintiffs ultimately seek dissolution of the current Board of Education and new rules that would reflect proportional and equal voting.

## ANALYSIS

**Motion to Stay**

　　Defendant initially sought a stay of these proceedings to allow the State of Illinois to intervene in this matter. Plaintiffs have represented to the Court that the Illinois

Attorney General's office has declined to intervene. Therefore, the motion to stay is DENIED AS MOOT.

**Motion to Dismiss**

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must view the amended complaint in a light most favorable to the plaintiff. <u>Williams v. Ramos</u>, 71 F.3d 1246, 1250 (7th Cir. 1995). The Court must accept all well-pleaded factual allegations and draw all reasonable inferences from those facts in favor of the plaintiff. <u>Richards v. Kiernan</u>, 461 F.3d 880, 882 (7th Cir. 2006). Therefore, the complaint can only be dismissed if the plaintiff cannot prove any set of facts upon which relief can be granted. <u>Cler v. Illinois Education Association</u>, 423 F.3d 726, 729 (7th Cir. 2005). A plaintiff is not required to plead facts, legal theories, or to anticipate defenses – he must merely place the defendant on notice of his claims. <u>Massey v. Merrill Lynch and Co., Inc.</u>, 464 F.3d 642, 650 (7th Cir. 2006).

Plaintiffs assert two claims: the first as voters who allege that the current Board of Education is unconstitutional because of a dilution of their votes; and the second as potential candidates from Township 32 who are foreclosed from holding office, even though they may receive a winning number of votes, if their seating would exceed the number of board members allotted to Township 32. Defendant argues that pursuant to

Dusch v. Davis, 387 U.S. 112 (1967), the State of Illinois has employed an appropriate election scheme that comports with the Constitution. Plaintiffs, however, cite to Hadley v. Junior College District of Metropolitan Kansas City, 397 U.S. 50 (1970), for the proposition that voting schemes that discriminate against more populous areas are unconstitutional.

In Dusch, the Supreme Court was faced with a "Seven-Four Plan" wherein four members of a borough council were elected at-large without regard to residency and seven members were elected at-large with regard to residency: each one was required to be a resident of one of the seven different boroughs that comprised the voting area (i.e. the city). In upholding the plan, the Court stated that:

> Each of the 11 councilmen is elected by a vote of all the electors in the city. The fact that each of the seven councilmen must be a resident of the borough from which he is elected, is not fatal. Id. at 115.

The Court found compelling that each of the councilmen were representatives of all of the voters of the city and not just those residing in the borough where he is a resident. Id. The Court further found that as there was no "invidious discrimination:" the seven-four plan did not violate the Equal

4

Protection Clause of the Fourteenth Amendment as construed by Reynolds v. Sims, 377 U.S. 533 (1964).[1]

In Hadley, the Court faced a voting scheme that was distinctly different from the scheme employed in Dusch. Hadley involved the election of six trustees of a Junior College District made from eight separate school districts in the Kansas City, Missouri area. 397 U.S at 51. Pursuant to the scheme, if all of the school districts had 33 1/3% or less of the total population of the Junior College District, each of the six trustees was voted for at large, i.e. by residents of each of the eight school districts. Id. at 56. If a school district had 33 1/3% to 50% of the total population, its residents were entitled to vote for two of the trustees and the residents of the remaining seven school districts voted for the other four trustees. Id. at 56-57. If a school district had 50% to 66 2/3% of the total population, its residents were entitled to vote for three of the trustees and the residents of the

---

[1] Reynolds applied the holding that the "fundamental principle of representative government in this country is one of equal representation for equal numbers of people, without regard to race, sex, economic status, or place of residence within a State" to State elections pursuant to the Equal Protection Clause. Id. at 560-561. The Court went on to hold that "[w]eighting the votes of citizens differently, by any method or means, merely because of where they happen to reside, hardly seems justifiable." Id. at 563. Thus, "[d]iluting the weight of votes because of place of residence impairs basic constitutional rights under the Fourteenth Amendment just as much as invidious discriminations based upon factors such as race or economic status." Id. at 566.

5

remaining seven school districts would vote for the other three trustees. Id. Finally, if a school district had 66 2/3% or more of the total population, its residents were entitled to vote for four of the trustees and the residents of the remaining seven school districts would vote for two. Id. at 57.

"This scheme allocates increasingly more trustees to large districts as they represent an increasing proportion of the total [potential student] enumeration." Id. In analyzing this scheme, the Supreme Court held that it violated the "one man, one vote" principle because it "results in a systematic discrimination against voters in the more populous school districts." Id. at 57.[2] For example, residents of the Kansas City School District with 60% of the population would only be entitled to vote for 50% of the trustees in the Junior College District. Id.

> Thus while voters in large school districts may frequently have less effective voting power than residents of small districts, they can never have more. Such built-in discrimination against voters in large districts cannot be sustained as a sufficient compliance with the constitutional mandate that each person's vote count as much as another's as far as practicable. Id.

---

[2] The main holding of Hadley is that the line of rulings from Wesberry v. Sanders, 376 U.S. 1 (1964), applying the "one man, one vote" principle to federal elections, to Reynolds, cited *supra*, applying this principle to state elections, to Avery v. Midland County, 390 U.S. 474 (1968), applying this principle to local elections, applied to any popularly elected governmental body, like a school board. Hadley, 397 U.S. at 53-56.

6

The crux of problematic voting scheme in Hadley was the manner in which voting occurred: rather than the at-large scheme employed in Dusch (where everyone voted for the members but members were limited by residence), the Hadley scenario limited voters by where they lived. Thus, residents of the Kansas City School District, which contained 60% of the voting population, could only vote for two trustees of the Junior College District.

Of course, Hadley concerned the residency of *voters*, not candidates. In the case at bar, Plaintiffs also complain of the residency requirements of *candidates*. The Hadley Court nonetheless indicated that:

> We have previously upheld against constitutional challenge an election scheme that required that candidates be residents of certain districts that did not contain equal numbers of people. Dusch v. Davis, 387 U.S. 112 (1967). Since all the officials in that case were elected at large, the right of each voter was given equal treatment. Hadley, at 58.

Applying this principle in Dallas County, Alabama v. Reese, 421 U.S. 477 (1975), a *per curium* holding, the Court reversed the Fifth Circuit Court of Appeals and held that a scheme wherein four commission members were voted for by all voters in a county, but where each of the commissioners must reside in one of the four districts that comprised the county, was constitutional. The Court stated that even though the four districts had different sized populations:

7

> Because the districts in the present plan are used merely as the basis of residence for candidates, not for voting or representation, each commissioner represents the citizens of the entire county and not merely those of the district in which he resides. Id. at 480.

It can be fairly concluded, based on Dusch and Dallas County, that the residency requirements for candidates are not unconstitutional as long as the candidates are voted for at large (i.e. as long as there are no voter residency requirements) and are answerable to all the electorate, not just those in their particular district. Thus, the key to resolving Plaintiff's first claim as voters is a determination of the manner in which the members of the Board of Education are elected: at-large or based on the residency of the voters.

The Complaint itself does not indicate the answer to this question. The Complaint, and the parties' briefs, do cite to the relevant statute, 105 Ill.Comp.Stat. 5/9-12, and the applicable ballot, Format 4. In reciting the requirements for the Format 4 ballot, the statute does not specifically indicate that voting is at-large. However, when read as a whole, the other ballot Formats do call for at-large voting. The Format 4 Ballot also does not limit voting by the residency of the voter. It appears, then, that the voting requirements for the Board of Education do not run afoul of the teachings in Hadley and are analogous to the scheme outlined and found constitutional in

8

Dusch and Dallas County.  Thus, the Plaintiffs' first claim, that their votes are diluted, fails to state a claim.

The Plaintiff's second claim is that, as potential candidates for office who may garner the necessary votes, they are foreclosed from winning a seat on the Board of Education if it already contains three residents from Township 32 because they also are residents of Township 32.[3]  Defendant argues, in part, that the residency requirements further compelling state interests in "fostering geographic diversity on school boards of large, multi-township districts . . . ."  Plaintiffs challenge this reasoning and argue that the scheme is designed only to subvert the will of the majority as the most popular candidate may not be seated.

In La Porte County Republican Cent. Committee v. Board of Com'rs of County of La Porte, 43 F.3d 1126 (7th Cir. 1994), the Seventh Circuit Court of Appeals considered a candidate-residency issue, that while not directly on point, offers some guidance.  In the case, three county commissioners were elected at-large; however, each commissioner was required to be a

---

[3] The Complaint itself seeks two forms of equitable relief, declaratory relief and an injunction.  Plaintiffs seek a declaration that their votes are diluted and that they are foreclosed from being elected to the Board of Education.  Plaintiffs further seek an injunction to prevent the current Board of Education from conducting business and that would direct further elections without regard to the residency of candidates.

9

resident of one of the three districts making up the county. During various election cycles, the commission re-drew the residence districts frequently in a manner that had nothing to do with population but that would effect the residency of candidates which in turn effected which candidates could run for office and against whom. In reversing the District Court's dismissal of the claims, the Court, in dicta, noted that re-districting that effected the residency of candidates is not unconstitutional; however, a challenge to rules that would have the only effect of disqualifying particular identifiable people deserved to go beyond the pleading stage. The Court held that those candidates (as oppose to voters) have a cause of action because "[r]ules curtailing eligibility to run for office may violate the Constitution even if they have nothing to do with the outcome – even if, for example, they exclude only candidates who are unlikely to prevail." Id. at 1129.

La Porte, involved the re-drawing of lines to accommodate individual politicians; in the case at bar, there is no allegation that the voting rules were changed mid-stream and frequently to exclude residents of Township 32. Rather, Plaintiffs allege that the scheme itself, since its inception, merely prevents a group of people, residents of Township 32 who would hold a fourth seat on the Board of Education, from running for office. There is no allegation of any invidious

discrimination or of the type of specific discrimination at issue in La Porte.  While Plaintiffs are not required to plead facts in their Complaint, see Vincent v. City Colleges of Chicago, 485 F.3d 919 (7th Cir. 2007), the facts that are alleged do not lead to the conclusion that Plaintiffs are complaining of the type of invidious discrimination that is prohibited by the Fourteenth Amendment.  For these reasons, Plaintiffs' second allegation as potential candidates fails to state a claim.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Defendant on February 14, 2007 [Doc. 5] is GRANTED and the Motion to Stay filed by Defendant on February 14, 2007 [Doc. 5] is DENIED AS MOOT.  CASE CLOSED.


Entered this  18th  day of June, 2007

                                        s/ Joe B. McDade
                                        JOE BILLY McDADE
                            United States District Judge